UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ZACHARY ALSEDEK,

       Plaintiff,

   v.

LIGHTHOUSE WORLDWIDE
SOLUTIONS, INC. *a California
Corporation*,

       Defendant.

Case No. 1:24-cv-01890-CL

**OPINION AND ORDER**

**CLARKE,** United States Magistrate Judge.

    Plaintiff Zachary Alsedek brings this case against his former employer, Defendant

Lighthouse Worldwide Solutions, Inc. Relevant to this Opinion, Plaintiff alleges that Defendant

lied to police and to a grand jury, falsely accusing Plaintiff of stealing confidential proprietary

documents. Defendant moves to strike claims three through five based on Oregon's anti-SLAPP

statute, ORS 30.150.[1] ECF No. 9. The parties consent to magistrate judge jurisdiction. ECF No.

19. For the reasons below, Defendant's Motion is GRANTED.

    / / /

    / / /

---

[1] SLAPP stands for Strategic Lawsuit Against Public Participation.

Page 1 — OPINION AND ORDER

## LEGAL STANDARD

The purpose of Oregon's anti-SLAPP statute, ORS 31.150, is to create a procedure "for expeditiously dismissing unfounded lawsuits attacking certain types of public speech." *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 814 (2016). A motion to strike under Oregon's anti-SLAPP law involves "a two-step process." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009). "The defendant must first demonstrate that the claim arises out of expressive activity protected by the statute." *Schwern v. Plunkett*, 845 F.3d 1241, 1245 (9th Cir. 2017). "If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." ORS 31.150(4).

"In this context, presenting a prima facie case means that the plaintiff has presented enough evidence to avoid a directed verdict—namely, enough evidence to meet the plaintiff's burden of production." *Handy v. Lane Cnty.*, 360 Or. 605, 618 (2016). The court views the evidence in the light most favorable to plaintiff and "may consider defendant's evidence only insofar as necessary to determine whether it defeats plaintiff's claim as a matter of law." *Mouktabis v. Clackamas Cnty.*, 327 Or. App. 763, 774 (2023) (quotation marks omitted). "If the plaintiff fails to meet this burden, the motion to strike must be granted." *Schwern*, 845 F.3d at 1245. If the court grants the defendant's special motion to strike, the stricken claims are dismissed without prejudice. ORS 31.150(1).

## BACKGROUND

Defendant is a manufacturer of clean room machinery such as particle counters. Plaintiff began working for Defendant in August 2017 and signed acknowledgement of Defendant's Employee Handbook. The Employee Handbook defined confidential and proprietary information

to include "information about . . . operating plans, processes, . . . systems, [and] procedures. . . ."
Def.'s Mot. Ex. 3 at 8, ECF No. 9-3. The Employee Handbook specified that information and
documents stored on Defendant's systems, including email servers, was considered company
"property regardless of the content." *Id.* at 12.

Plaintiff held the position of Quality Manager. He was responsible for overseeing
internal audits and for implementing procedural changes in preparation for external quality
assurance audits so that Defendant could maintain its International Organization for
Standardization ("ISO") certifications. ISO standards are best practices guidelines for consumer
products and services. Alsedek Decl. ¶ 1, ECF No. 12. One of Plaintiff's direct reports, Bronte
Clark ("Clark"), conducted audits and submitted them to Plaintiff for inclusion in audit reports.

On September 8, 2023, Clark gave three weeks' notice of her voluntary resignation from
Defendant. On September 13, 2023, Plaintiff and Clark founded Coherent Quality, LLC. Def.'s
Mot. Ex. 6, ECF No. 9-6. Their website stated that Coherent Quality conducted consulting and
auditing services, specializing in ISO certification, helping "you efficiently meet requirements
without adding unnecessary overhead." Alsedek Decl. Ex. 2. Coherent Quality did not
manufacture clean room equipment or particle counters. Alsedek Decl. ¶ 8.

Clark's last day of employment with Defendant was September 29, 2023. Plaintiff took
preapproved parental leave beginning October 5, 2023 and scheduled to end December 22, 2023.
Smith Decl. ¶ 7, ECF No. 10. Before taking parental leave, Plaintiff's supervisor told him that
the timing of Clark's resignation and Plaintiff's parental leave was "leaving us high and dry"
because they were the only two employees who could complete the internal audit scheduled for
November. Alsedek Decl. ¶¶ 5–6.

Plaintiff cites to a screen shot of text messages that purportedly show that his supervisor asked him to complete the audit while on leave. Alsedek Decl. ¶ 9 (citing Ex. 1). However, the screen shot of the text messages undermines Plaintiff's assertion. On October 10, 2023, Plaintiff's supervisor texted him, "Sorry to bother you, but we can't locate the files for the 4 internal audits performed so far this year. Can you point me to them?" Alsedek Decl. Ex. 1. On October 11, 2023, Plaintiff's supervisor texted, "Can you please answer my question." *Id.* Plaintiff did not respond to either text message.

On October 12, 2023, Plaintiff emailed from his work email to his personal email, several documents belonging to Defendant, including a template audit report, training records, individual employee reports, and a completed analysis report of an ISO audit. Def.'s Mot. Ex. 10 at 6, ECF No. 9-10. Plaintiff declares that he uploaded the completed audit report to Defendant's server the next day. Alsedek Decl. ¶ 10. Plaintiff does not offer evidence explaining why, despite being able to access the documents from home, he sent documents to his personal email address.

On November 9, 2023, Defendant discovered that Plaintiff and Clark had formed Coherent Quality and that it offered auditing and consultation on ISO certification. Smith Decl. ¶ 8. On November 13, 2023, Defendant's IT team discovered that emails containing confidential and proprietary information, as defined in the Employee Handbook, were sent from Clark's work email to her personal email. The majority of Clark's personal emailing activity occurred on her last day of employment. Defendant also discovered that Clark sent some of these documents to Plaintiff's personal email and that Plaintiff had sent documents from his work email to his personal email as well. Some of these documents related to quality assurance procedures and were relevant to the work being offered by Coherent Quality.

Defendant's Human Resources ("HR") manager, Kerry Smith, then called Plaintiff to discuss her concerns regarding Plaintiff's side business and Defendant's conflict-of-interest policies. Viewed in the light most favorable to Plaintiff, Plaintiff informed Smith that he could not appear for a meeting the following morning because his wife was working and he had to take care of his newborn baby. On November 14, 2023, Defendant terminated Plaintiff based on its finding that Plaintiff had sent confidential information to his personal email. Defendant also issued a cease-and-desist letter, warning Plaintiff and Clark that failure to comply with their contractual promises would result in Defendant filing a lawsuit for injunctive relief.

Defendant concluded that Plaintiff and Clark's handling of company documents was highly unusual and suspicious, particularly in light of the organization of Coherent Quality and Clark's resignation. At the advice of counsel, Defendant filed a police report with the Jackson County Sheriff's Department. According to a police report summarizing Smith's complaint, Smith reported that Plaintiff and Clark had "emailed the detailed information of the secret patented recipe from their work computer to their home email computer." Def.'s Mot. Ex. 9, ECF No. 9-9. The officer forwarded the information to the district attorney who then decided to bring charges. On February 20, 2024, at the request of the District Attorney, Smith testified in front of a grand jury. The grand jury returned a true bill, indicting Plaintiff and Clark for unlawfully and knowingly using a computer "for the purpose of committing theft of patented material and/or obtaining property by means of a false or fraudulent pretenses." Def.'s Mot. Ex. 12, ECF No. 9-12. The charges were later dismissed at the request of the District Attorney.

Prior to the indictment and grand jury proceeding, Plaintiff and Clark agreed with Defendant's request to have their devices and email accounts examined by and third-party forensic expert to identify and remove any of Defendant's files. The third-party forensic analysis

confirmed that Plaintiff possessed Defendant's documents on a personal email account and on an external hard drive. Smith Decl. ¶ 17; Def.'s Mot. Ex. 11, ECF No. 9-11. At the request of the District Attorney, Defendant forwarded information related to the third-party investigation for use in the criminal investigation.

As a result of the criminal indictment, Plaintiff claims he suffered economic and noneconomic damages, including the seizure of his concealed carry permit, denial of rental applications, and a temporary bar from employment opportunities. Alsedek Decl. ¶¶ 14–17, Exs. 4–7. On June 6, 2025, Plaintiff filed his Complaint, alleging that Defendant violated Oregon and Federal family leave protections, and that it was liable for defamation, malicious prosecution, and abuse of process.

## DISCUSSION

Defendant moves to strike Plaintiff's claims for Defamation *per se* (claim three), Malicious Prosecution (claim four), and Abuse of Process (claim five) based on Oregon's anti-SLAPP statute, ORS 31.150. The parties agree that Defendant's conduct, providing a statement to a police officer and testifying before a grand jury, are expressive activities protected by Oregon's anti-SLAPP statute. The burden therefore shifts to Plaintiff to present substantial evidence to support a prima facie case for each claim. ORS 31.150(4).

## I.    Defamation *per se*

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann v. Liles*, 358 Or. 706, 711 (2016). "In the professional context, a statement is defamatory if it falsely 'ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession.'" *Id.* at 711–12 (2016) (quoting *Brown v.*

*Gatti*, 341 Or. 452, 458 (2006) (alteration in *Neumann*)). False statements that injure the plaintiff

in his profession or trade are defamatory *per se*, and the plaintiff is not required to prove a

specific harm. *Muresan v. Philadelphia Romanian Pentecostal Church*, 154 Or. App. 465, 473

(1998). Statements that falsely accuse the plaintiff of committing a crime are also defamatory *per*

*se. Id.* In short, to establish his prima facie case for defamation *per se*, Plaintiff must produce

evidence that Defendant (1) made a false statement; (2) to a third party; (3) accusing Plaintiff of

committing a crime related to his profession. *Id.*

"Truth is an affirmative defense to a defamation claim." *Lansford v. Georgetown Manor,*

*Inc.*, 192 Or. App. 261, 270, *opinion adhered to as modified on reconsideration,* 193 Or. App. 59

(2004). "A statement may be considered true or substantially true if the 'gist' or 'sting' of the

statement is true, even though the statement contains slight inaccuracies." *Hickey v. Settlemier*,

116 Or. App. 436, 440 (1992), *aff'd in part, rev'd in part,* 318 Or. 196 (1993) (citing Restatement

(Second) Torts, § 581 (1977)). As the Restatement explains:

> many charges are made in terms that are accepted by their recipients in a popular
> rather than a technical sense. Thus a charge of theft may be reasonably interpreted
> as charging any form of criminally punishable misappropriation, and its truth may
> be established by proving the commission of any act of larceny or embezzlement.
>
> It is not necessary to establish the literal truth of the precise statement made.
> Slight inaccuracies of expression are immaterial provided that the defamatory
> charge is true in substance.

Restatement (Second) of Torts § 581A cmt. f (1977).

Here, Defendant argues that Plaintiff's defamation claim fails as a matter of law because

Smith's statements to police and before the grand jury were true; Plaintiff misappropriated

confidential documents that belonged to Defendant by sending them to his personal email.

Plaintiff responds that Smith's accusation that Plaintiff stole a "secret patented recipe" was false

because the documents were merely generic forms that Plaintiff used to do his job. The Court

finds that Plaintiff's claim fails because Smith's defamatory charge was true in substance.

In the police report summarizing his interview with Smith, the officer disclaimed that the report "summary is intended to provide the reader with a general understanding of what was said." Def.'s Mot. Ex. 9 at 4, ECF No. 9-9. The officer reported that he was responding to a complaint of "possible fraud or a computer crime" involving two employees. *Id.* The officer's report continues:

> I spoke with Kerry Smith who told me that both Bronte Clark and [Plaintiff] had signed a non-disclosure agreement on the protection of the data for the secret recipe for their product. Kerry said both Bronte and [Plaintiff] emailed the detailed information of the secret patented recipe from their work computer to their home email computer.
>
> The emails sent were scanned copies of the recipe along with handling and processing procedures. . . .
>
> Kerry told me [i]t was also known to her, that Bronte and [Plaintiff] had started their own business.

*Id.*

Viewed in the light most favorable to Plaintiff, Smith's statements were not technically true. Defendant has not put forth evidence that Plaintiff sent himself a document that contained a literal "secret recipe." However, Smith worked for Defendant as an HR professional, not as a scientist or technician, and her accusation was made in a "popular rather than technical sense." Restatement (Second) of Torts § 581A cmt. f (1977). There is no dispute that the overall "gist" or "sting" of Smith's statements were true: Plaintiff misappropriated Defendant's property by sending himself confidential documents that were relevant and beneficial to the side business he was starting with Clark.

Plaintiff's purported explanations for his legitimate need to access the documents while on leave do not explain why he sent the documents from his work email to his personal email, and there is no evidence that Defendant asked Plaintiff to work while on leave. Plaintiff stated in a declaration that his boss asked him to upload an audit while on leave, purportedly evidenced by

screen shots of those text messages attached to the declaration. Alsedek Decl. ¶ 9. However, the screen shot of the text messages attached to the declaration shows that Plaintiff's boss did not ask him to upload an audit, he merely asked Plaintiff if he could help him locate the files. Alsedek Decl. Ex. 1. No reasonable jury could conclude that Smith's statements were substantively false. Plaintiff's defamation claim fails as a matter of law.

## II.     Malicious Prosecution

To establish a prima facie case for malicious prosecution, the plaintiff must establish the following elements: "(1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result." *Miller v. Columbia Cnty.*, 282 Or. App. 348, 360 (2016) (footnote omitted). To prove the second element, by or at the insistence of the defendant, Plaintiff must produce evidence that Defendant was "actively instrumental" in the decision to bring charges before the grand jury. *Gustafson v. Payless Drug Stores Nw., Inc.*, 269 Or. 354, 363 (1974) (quotation marks omitted). "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). A person does not institute a criminal proceeding when he provides accurate information to the police who, in turn, investigate the accusations and refer the case to the district attorney. *Gustafson*, 269 Or. at 364.

Here, Plaintiff characterizes Defendant's motion to strike Plaintiff's malicious prosecution claim as challenging the sufficiency of the allegations in the Complaint. Pl.'s Resp.

at 11, ECF No. 11. However, Defendant makes a factual challenge to Plaintiff's malicious

prosecution claim, supported by several citations to evidence in the record attacking the truth of

Plaintiff's allegations. Def.'s Mot. at 11 (citing *e.g.* Smith Decl. ¶ 19 and Smith Decl. Ex. 12).

Plaintiff fails to cite any evidence that the grand jury proceeding was instituted at the insistence

of Defendant. In response to Defendant's motion, Plaintiff cites paragraphs 32 and 52 of the

Complaint. Pl.'s Resp. at 11. However, allegations in the complaint are not evidence and

therefore fail to support Plaintiff's burden. Moreover, evidence submitted by Plaintiff shows that

the decision to bring charges was made by the district attorney. Smith Decl. Ex. 9 at 4 (police

report stating that Smith's "[i]nformation w[ould] be "forwarded to the Jackson County DA's

Office for further review for charges"). Plaintiff does not meet his burden of producing evidence

that the grand jury proceeding was instituted at the insistence of Defendant.

     Plaintiff also fails to meet his burden of presenting evidence that Defendant acted without

probable cause. "[T]he existence of probable cause is a complete defense to a claim for malicious

prosecution." *Hartley v. Water Resources Dept.*, 77 Or. App. 517, 520 (1986). A grand jury

indictment constitutes presumptive "—but not *conclusive*—evidence of probable cause."

*Awabdy*, 368 F.3d at 1067; *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975). "Among the ways

that a plaintiff can rebut a [presumptive] finding of probable cause is by showing that the

criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other

wrongful conduct undertaken in bad faith." *Awabdy*, 368 F.3d at 1067. For the reasons explained

above, Smith's statements to police and before the grand jury regarding Plaintiff's

misappropriation of company documents were substantively true. The presumption of probable

cause remains unrebutted.

Plaintiff also fails to present evidence from which a reasonable jury could conclude that Defendant acted with malice. "For a malicious prosecution claim, malice is defined as any primary purpose other than to bring a person to justice." *Mouktabis*, 327 Or. App. at 774 (quotation marks omitted). Defendant's statement that Plaintiff was leaving the company "high and dry" by taking parental leave does not amount to substantial evidence that the criminal prosecution was undertaken in bad faith.

Plaintiff fails to meet his burden of production regarding Defendant's insistence, lack of probable cause, and malicious intent, and the claim for malicious prosecution is dismissed.

### III.    Abuse of Process

Abuse of process is defined as "the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause." *Kelly v. McBarron*, 258 Or. 149, 154 (1971). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Larsen v. Credit Bureau, Inc. of Georgia*, 279 Or. 405, 408 (1977) (quoting William L. Prosser, *Handbook of the Law of Torts* § 121, at 857 (4th ed 1971)).

Plaintiff argues that he "can show Defendant had an ulterior motive either solely based on the lying to police and the grand jury or because Defendant sought to punish Plaintiff and [Clark] for leaving them 'high and dry.'" Pl.'s Resp. at 14. For the reasons explained above, the record does not contain evidence from which a reasonable jury could conclude that Smith's statements to police and the grand jury were substantively false. Plaintiff's declaration that a supervisor stated that Plaintiff was leaving the company "high and dry" is insufficient to support a prima facie case that Defendant made a "perversion legal procedure to accomplish an ulterior purpose."

*Kelly*, 258 Or. at 154. Plaintiff therefore fails to meet his burden of production on his claim for abuse of process.

## IV.    Attorney Fees

ORS 31.152(3) provides that "[a] defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs." Defendant prevailed and is entitled to reasonable attorney fees and costs upon the filing of a proper motion.

## CONCLUSION

Plaintiff fails to meet his burden of presenting substantial evidence to support a prima facie case for the claims discussed above, and "the motion to strike must be granted." *Schwern*, 845 F.3d at 1245. Plaintiff's claims for Defamation *per se* (claim three), Malicious prosecution (claim four), and Abuse of Process (claim five) are dismissed without prejudice. ORS 31.150(1).

DATED this 20 day of October, 2025.

MARK D. CLARKE
United States Magistrate Judge